IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SAS INSTITUTE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:03CV01063 |
| | ) |
| PRACTICINGSMARTER, INC., | ) |
| | ) |
| Defendant and | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES H. GOODNIGHT, THERESA | ) |
| TESH, MELISSA FITZPATRICK, and | ) |
| ADAM RUDD, | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |

<u>MEMORANDUM OPINION</u>

BEATY, District Judge.

I.    INTRODUCTION

Plaintiff SAS Institute, Inc. ("SAS") has brought a declaratory judgment lawsuit in this matter against Defendant PracticingSmarter, Inc. ("PracticingSmarter") to determine whether SAS is infringing on PracticingSmarter's intellectual property rights or defrauded PracticingSmarter in some other way. In return, PracticingSmarter has brought counterclaims

against SAS alleging that SAS is violating PracticingSmarter's copyrights, as well as claims for misappropriation of trade secrets, unfair or deceptive trade practices or unfair methods of competition, constructive fraud, and intentional interference with contract. PracticingSmarter has also brought in James H. Goodknight, Teresa Tesh, Melissa Fitzpatrick, and Adam Rudd as Third-Party Defendants (altogether the "Third-Party Defendants") who participated in SAS's allegedly fraudulent practices. This matter is presently before this Court on Plaintiff SAS's and the Third-Party Defendants' Motion to Dismiss Counterclaims and Third-Party Complaint [Document #34] under Fed. R. Civ. P. 12(b)(6). SAS and the Third-Party Defendants seek to dismiss PracticingSmarter's counterclaims and the Third-Party Complaint because PracticingSmarter allegedly failed to disclose the existence of the claims during PracticingSmarter's earlier bankruptcy action. For reasons discussed below, the Court will deny the Motion to Dismiss at this time, without prejudice to the parties reasserting these arguments in a summary judgment motion.

II. FACTUAL BACKGROUND

As is proper when considering a Motion to Dismiss, this Court will consider the facts in a light most favorable to the non-moving party, which in this case is the Defendant. The Court will briefly recite an abridged factual basis of the matter. SAS is an international software company headquartered in Cary, North Carolina, that develops and sells business intelligence and analytical computer software, including its SAS Strategic Performance Management™ software products ("SAS Strategic Software"). PracticingSmarter is a healthcare business

2

consulting company headquartered in Durham, North Carolina. In the year 2000, PracticingSmarter sought to license SAS's Strategic Software in order to create a "proprietary solution" for health care organizations to be able to determine best practices and develop performance objectives. While SAS and PracticingSmarter were able to conduct some business together, their relationship soured in 2001. PracticingSmarter had received a $750,000 investment by SAS in 2000. However, in 2001, when PracticingSmarter sought a firmer licensing agreement with SAS and more investment funds, SAS denied both the new licensing agreement and the additional funding. As a result of this failure to get additional funding, PracticingSmarter filed for bankruptcy protection and laid off all but three of its more than thirty employees. At some point, SAS hired a number of those former PracticingSmarter employees and started its own healthcare consulting business, taking on at least one contract that PracticingSmarter had sought with Brigham & Women's Hospital ("Brigham & Women's") in Boston, Massachusetts. PracticingSmarter alleges that its former employees took with them to SAS PracticingSmarter's intellectual property – its product, originally named "Performance Management for Healthcare," included marketing materials, computer code, automated databases, and screen displays – and that SAS then used it to recruit additional clients during 2002.

In terms of the bankruptcy proceedings, PracticingSmarter filed for Chapter 11 bankruptcy protection in the Eastern District of North Carolina (the "Bankruptcy Court") on December 6, 2001. The Bankruptcy Court used an expedited process to handle the case and streamlined the process for disclosure. Because of this accelerated process, PracticingSmarter filed

3

its schedule of assets and liabilities on January 18, 2002. This schedule listed SAS's claim against PracticingSmarter for the $750,000 investment made in 2000 as a debt that was non-contingent, liquidated, and undisputed. Moreover, PracticingSmarter affirmed that it had "no setoffs or counterclaims" against SAS. PracticingSmarter also listed former employees (now Third-Party Defendants) Adam Rudd and Melissa Fitzpatrick as holding unpaid wage claims, which were also listed as debts that were non-contingent, liquidated, and undisputed. In August 2002, after PracticingSmarter filed this schedule but before it submitted its Plan and Disclosure Statement, PracticingSmarter applied to the Bankruptcy Court to appoint the law firm of Twiggs, Beskind, Strickland & Rabenau, P.A. ("Twiggs, Beskind") as special litigation counsel because "[p]rior to and during the case, certain individuals and corporations have impacted the Debtor in tortious and/or fraudulent manners to the substantial damage of the debtor corporation. The law firm of [Twiggs, Beskind] has undertaken a preliminary review of these matters . . ." Twiggs, Beskind was hired under a contingent fee arrangement in which it would only receive attorneys' fees if it pursued PracticingSmarter's potential causes of action to a successful recovery. Subsequent to this application to the Bankruptcy Court, none of PracticingSmarter's creditors objected to either the appointment of litigation counsel or the contingent fee basis. The Bankruptcy Court then granted the application and appointed Twiggs, Beskind on August 23, 2002.

Less than a month later, PracticingSmarter filed its Reorganization Plan ("the Plan"). The Plan included a section on "Designated Litigation." That section mentioned that the Bankruptcy Court had authorized the appointment of Twiggs, Beskind as special litigation counsel, but that

4

no litigation had begun and that demand would be made on those who had injured PracticingSmarter's business operations. PracticingSmarter also "expressly retained" all causes of action as the Reorganized Debtor, in order to allow it to go forward to investigate and prosecute claims post-confirmation. However, PracticingSmarter further represented that the total value of its property, including "any cause of action against others that the Debtor may have," was significantly less than the value of SAS's claim, so that if PracticingSmarter was liquidated, "it is clear that nothing would be available to provide any payment to unsecured creditors." No creditor objected to the Plan, or requested more information about potential litigation, including SAS, PracticingSmarter's largest non-insider creditor. The Bankruptcy Court confirmed the Plan on December 10, 2002, and the bankruptcy became final 180 days later. SAS, by voting to confirm the Plan, received 50 cents on the dollar on its $750,000 loan to PracticingSmarter. On June 12, 2003, PracticingSmarter filed its Final Report and Motion for Final Decree representing that it was in full compliance with the Plan. No mention was made of any potential litigation claims. The Bankruptcy Court then issued a Final Decree on July 18, 2003, finding that the Plan had been substantially consummated.

In October 2003, Twiggs, Beskind sent a letter to SAS outlining the harms SAS had allegedly caused to PracticingSmarter and asking to mediate the dispute or face further litigation. More specifically, PracticingSmarter alleged in that letter that SAS had schemed to misappropriate trade secrets, intellectual property, marketing materials, employees and business prospects. PracticingSmarter threatened litigation if SAS refused to mediate the dispute.

5

SAS and Third-Party Defendants now assert that, for reasons of judicial estoppel, res judicata, and other estoppel-type defenses, PracticingSmarter should be barred from bringing these claims in this Court because PracticingSmarter failed to disclose the claims during the bankruptcy proceedings. In response, PracticingSmarter argues that estoppel does not apply to this case because SAS was informed during the bankruptcy proceedings of the potential claim, or because SAS should have known of the potential claim, but also that this motion is improper in the context of a motion to dismiss.

III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 998 (2002) (internal quotations omitted); accord Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. Neitzke v. Williams, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 1832 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

to support the claims." Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989)(internal quotations omitted).

In terms of a bankruptcy proceeding, a debtor has an affirmative duty to fully disclose its assets and liabilities, as well as a statement of the debtor's financial affairs. See 11 U.S.C. § 521(1). This disclosure must include all "contingent and unliquidated claims of every nature" and estimate a value as to each claim. Bankruptcy Rule 1007(b)(1); Official forms, Schedule B. App. 41. A debtor who fails to disclose a potential cause of action against one or more of its creditors may be barred from asserting those claims in a later action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 325 (3d Cir. 2003). This is to prevent a party from gaining an unfair advantage by taking inconsistent positions, to promote "the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (holding that debtor was precluded from pursuing claims about which he had knowledge but did not disclose during the bankruptcy proceedings).

However, in order to rely on judicial estoppel to bar a claim, a party must establish three elements: "(1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage." King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196 (4th Cir. 1998). Judicial estoppel will not
7

be applied if the inconsistent positions came about as a result of inadvertence or mistake. Id. Moreover, "[j]udicial estoppel is an 'extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996) (internal citation omitted).

The Court has grave concerns about PracticingSmarter's motivations in this case concerning when it knew of its potential claims against SAS and its lack of clarity with respect to the outstanding litigation claims during the bankruptcy proceedings, particularly as would involve SAS. However, taking PracticingSmarter's claims in a light most favorable to it, it is unclear from the pleadings when PracticingSmarter actually knew that SAS had allegedly misappropriated PracticingSmarter's intellectual property and was using it to steal PracticingSmarter's clients and attract new clients. It is these facts that make up the bulk of PracticingSmarter's claims against SAS and the Third-Party Defendants, *not* the fact that SAS may have driven PracticingSmarter into bankruptcy by denying PracticingSmarter additional funding. Accordingly, the Court must deny SAS and Third-Party Defendants' Motion to Dismiss at this time, because, taking all inferences in favor of PracticingSmarter, it is not possible at this point in the proceedings for the Court to determine whether, or when, PracticingSmarter took an "inconsistent position intentionally."

8

While SAS and Third-Party Defendants assert that this case is no different than Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988), in which the district court granted a motion to dismiss based upon judicial estoppel, this Court finds that the claims in Oneida differ from this matter. For example, as the claims in Oneida were that the creditor's actions were responsible for forcing Oneida into bankruptcy, the court found that "we are unpersuaded by Oneida's current position that the two actions represent unrelated events." Id. at 419 n.5. In contrast, in this matter, PracticingSmarter's claims primarily consist of the factual allegations that SAS misappropriated PracticingSmarter's intellectual property and then used it beginning in 2002 to further SAS's own healthcare consulting business. While SAS continuously alleges that PracticingSmarter had knowledge of all potential claims by August 2002, when Twiggs, Beskind was hired, the Court finds that, at the motion to dismiss stage, such an inference would be impermissible based upon the standard of review in Fed. R. Civ. P. 12(b)(6) and the actual allegations in the pleadings. For example, PracticingSmarter asserts in its Response to the Motion to Dismiss that at the time that Twiggs, Beskind was hired as special litigation counsel, nothing material had been done by Twiggs, Beskind or any other party to determine whether any claims existed or the potential worth of those claims. Therefore, because proof of the timing of PracticingSmarter's knowledge of the existence of their claims is an essential element as to judicial estoppel, and because PracticingSmarter's counterclaims and Third-Party Complaint are not clear on their face as to this issue, the Court finds it must deny at this time the Motion to

9

Dismiss.[1]

IV.   CONCLUSION

For the reasons discussed above, the Court will deny SAS and the Third-Party Defendants' Motion to Dismiss PracticingSmarter's counterclaims and the Third-Party Complaint [Document #34] based upon judicial estoppel, equitable estoppel, or res judicata. However, based upon matters developed during discovery, the parties may reassert these arguments, if necessary, in a motion for summary judgment. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

---

[1] Similarly, the Court will deny at this time SAS and the Third-Party Defendants' alternate arguments for dismissal, those being res judicata and equitable estoppel. Res judicata typically bars litigation of a matter actually adjudicated in an earlier case, and also any other claim that might have been presented. See In re Varat Enters., 81 F.3d 1310, 1315 (4th Cir. 1996). Therefore, the same issue precluding a finding as to judicial estoppel bars a finding as to res judicata, that being, at what point, prior, during, or after the bankruptcy proceedings, did PracticingSmarter know it could bring these claims? Moreover, res judicata may not ultimately be appropriate in this case because the Court has concerns about whether PracticingSmarter's claims "are part of the same cause of action" or "the same core of operative facts" as the bankruptcy proceedings. Id. at 1316. Therefore, the Court will decline to consider at this time the argument as to res judicata.

   The doctrine of equitable estoppel is that "a person's act, conduct or silence when it is his duty to speak," may also preclude one from asserting a right he would otherwise would have had against another who relied on the voluntary action. Id. at 1317. This doctrine applies where four elements are met: (1) the estopped party knew the relevant facts; (2) the estopped party intended for the conduct to be acted or relied upon, when the acting party had the right to believe that conduct was so intended; (3) the acting party was ignorant of the true facts; and (4) the acting party relied upon the conduct to its injury. Id. In this case, similarly to the problems the Court faces with applying judicial estoppel or res judicata, it is unclear at this time whether SAS was, in fact, ignorant of the true facts, or, alternatively, when PracticingSmarter actually knew it could bring these claims. Accordingly, the Court will also decline at this time to make findings concerning equitable estoppel.

This, the 6th day of July, 2006.

_____
United States District Judge